UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| **CONSTANCE SHIMKO**, | 4:17-cv-11709 |
| Plaintiff, | HON. TERRENCE BERG |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** |
| **LOWE'S HOME CENTERS, LLC and LOWE'S COMPANIES, INC**., | |
| Defendants. | |

Constance Shimko, Plaintiff in this case, worked at Lowe's from 2005 until she was terminated in 2015. She is now suing Lowe's Home Centers, LLC, and Lowe's Companies, Inc., the Defendants, under several federal and state statutes claiming discrimination for health and disability-related reasons. The precipitating events that led to Plaintiff's termination were that she took approved leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654 from May 14, 2014 through June 30, 2014,

but never provided "return-to-work authorization" from her medical provider following exhaustion of that medical leave. Defendants terminated her one year after she went on leave. Plaintiff in turn claims Defendants refused to give her a return-to-work schedule and that she was prevented from returning to her job in violation of the FMLA, Employee Retirement Security Income Act ("ERISA"), 29 U.S.C. § 1140, Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12117, Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq.*, and Michigan Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws §§ 423.503–423.505.

This case is now before the Court on Defendants' motion to dismiss Lowe's Companies from the suit, and for summary judgment on all of Plaintiff's claims in favor of both Defendants. Having carefully reviewed the record in this case, as well as the briefing of both parties and their oral arguments, the Court concludes that both motions should be granted.

## BACKGROUND

Plaintiff began working for Lowe's on March 8, 2005 as an Installed Sales Coordinator. *See* Defs.' Mot. for Summ. J. and Mot. to Dismiss ("Defs.' Br."), ECF No. 16-19 at PageID.182; Pl.'s Resp., ECF No. 17-5 at PageID.284. After completing a three-month orientation at the New Hudson, Michigan store, she received the title of Installed Sales Manager. *See* Pl.'s Ex. 4 at PageID.284. In April 2006, Plaintiff was promoted to Administrative Manager and received a 24% raise. *Id.* at PageID.285. But in 2008 and 2009, the New Hudson Lowe's Location Manager, Jim Geers, issued her written notices of poor job performance, including for failure to "perform the job functions of an administrative manager" and "repeated failures on front end execution, order management, [and] special order sales." Defs.' Ex. 3, ECF No. 16-4; Defs.' Ex. 4, ECF No. 16-5. Geers warned Plaintiff that "[f]urther violations may result in further disciplinary action, up to and including termination." Defs.' Ex. 4.

Reed Group is the third-party administrator that processed leave requests for Lowe's employees. Pl.'s Ex. 4 at PageID.296. It decided whether to approve or deny such requests and managed the

process of requesting medical certifications and any additional paperwork needed to process leave requests. *Id.* at PageID.296–97. Plaintiff understood all leave requests and certifications supporting leave requests had to be submitted through Reed Group, and that all decisions on leave applications were made by Reed Group. *Id.* at PageID.296–97. But she did not know what information Reed Group passed on to Defendants regarding her leave requests. *Id.* at PageID.297.

Plaintiff first took approved personal leave from April 30, 2009 through May 11, 2009. Defs.' Ex. 9, ECF No. 16-10 at PageID.154 (Lowe's PeopleSoft Report). Then, in early 2010, she asked Lowe's to transfer her to another store because she believed Geers, the New Hudson Store Manager, had unfairly disciplined her.[1] Pl.'s Ex. 4 at PageID.286, 288–291; Defs.' Ex. 9 at PageID.154. Lowe's granted that request and transferred Plaintiff to the White Lake, Michigan store. Pl.'s Ex. 4 at PageID.286. But Plaintiff's job performance did not improve after transferring to Lowe's White

---

[1] Plaintiff clarified in deposition testimony that she does not believe Lowe's discriminated against her for taking medical leave while she was working at the New Hudson store. Pl.'s Ex. 4 at PageID.288.

4

Lake location. Defs.' Ex. 5, ECF No. 16-6 (February 24, 2011 Coaching Letter from Elton White, Store Manager); Pl.'s Ex. 4 at PageID.286.

A few months after the transfer, Plaintiff requested and was approved to take FMLA leave from May 27, 2010 through June 12, 2010 for gallbladder surgery. Defs.' Ex. 9 at PageID.154; *see* Pl.'s Ex. 4 at PageID.296. Reed Group also granted her request to take personal leave from June 14, 2010 through June 28, 2010. *See* Defs.' Ex. 9 at PageID.154.

In 2012, Plaintiff was diagnosed with leukemia. Pl.'s Ex. 4 at PageID.295, 297–98. She testified that at this time she "d[idn't] know what [her] future [was] going to look like with this new diagnosis in place. So [she] voluntarily asked to be put back into a department manager position" at Lowe's. *Id.* at PageID.295; *see* Defs.' Ex. 9 at PageID.155. Plaintiff spoke with Arturo Sierra, her store's Human Resources Manager, and Elton White, the Store Manager, about this decision; they approved her voluntary demotion on June 23, 2012. *See* Pl.'s Ex. 4 at PageID.297; Defs.' Ex. 9 at PageID.155.

A few months later, Plaintiff took approximately 12 weeks of approved FMLA leave to undergo surgery on her paraesophageal hernia. Pl.'s Ex. 4 at PageID.298–99 (testifying that she took 12 weeks of FMLA leave); *but see* Defs.' Ex. 9 at PageID.155 (categorizing this period of leave as approximately seven weeks of "Personal" leave). When Plaintiff returned from leave, her work performance continued to fall below company expectations. She received another disciplinary notice on August 16, 2013, which stated that she had "several outstanding issues [that] have not improved and or are below market expectations." Defs.' Ex. 6, ECF No. 16-7. She received a similar notice of deficient performance on September 23, 2013. Defs.' Ex. 7, ECF No. 16-8. Plaintiff does not dispute these evaluations of her work. Pl.'s Ex. 4 at PageID.299–300.

Defendants ultimately placed Plaintiff on a Performance Improvement Plan (PIP) in late 2013. Defs.' Ex. 8, ECF No. 16-9. The PIP's purpose was to "improve basic functions of the DMIS in order to meet Market metrics for key indicators in installed sales." *Id.* at PageID.150. Plaintiff, however, received another disciplinary notice for confronting two co-workers on February 13, 2014. Defs.' Ex. 10,

ECF No. 16-11. She admits she was "struggling" during this period, and that her medical problems made performing her job challenging. Pl.'s Ex. 4 at PageID.298, 300. After talking to Sierra about ongoing difficulty she was experiencing performing her job functions, Plaintiff concluded the best course of action was to take medical leave. *Id.* at PageID.300.

Consistent with this plan, Plaintiff called Reed Group "to open a new leave of absence case." Defs.' Ex. 15, ECF No. 16-16 at PageID.175. She initially requested intermittent FMLA leave for an "employee health condition" beginning April 28, 2014 and ending October 26, 2014. *Id.*; Defs.' Ex. 14, ECF No. 16-15 at PageID.168 (Sep. 11, 2014 Letter from Reed Group to Plaintiff). A Reed Group Customer Service Specialist advised Plaintiff she needed to submit required certification from her healthcare provider by May 17, 2014. *See* Defs.' Ex. 15 at PageID.175. A week later, Plaintiff called Reed Group to amend her leave request, stating that she would be "completely off of work" for health reasons beginning May 14, 2014 and needed continuous rather than inter-

mittent FMLA leave from May 14 to June 30, 2014. *See id.* As requested by Plaintiff, a Reed Group Leave Specialist sent updated paperwork to her personal email address and told her it had to be returned by June 2, 2014. *Id.* Plaintiff faxed over her paperwork, which a Reed Group supervisor found "support[ed] the leave for a continuous duration" from May 14 to June 30, 2014 "due to employee health condition." *Id.* at PageID.175; *see* Defs.' Ex. 14 at PageID.168 (approving Plaintiff's request for continuous FMLA leave from May 14, 2014 through June 30, 2014 only). But Plaintiff's paperwork did not support her request for intermittent FMLA leave after June 30, 2014. Defs.' Ex. 15 at PageID.175. Reed Group thus advised Plaintiff it needed to "contact[ ] the [medical] provider for additional information in order to approve the intermittent time." *Id.* at PageID.174.

Efforts by Reed Group Leave Specialists to contact Plaintiff's medical provider are well-documented; they attempted to reach Plaintiff's doctor on May 23, May 29, May 30, June 3, and June 5, 2014. *Id.* at PageID.174–75. It appears Reed Group was not able to reach Plaintiff's doctor and, on June 5, 2014, a Reed Group Leave

Specialist concluded there was insufficient certification to support her request for intermittent FMLA following expiration of her continuous FMLA leave on June 30, 2014. *Id.* at PageID.173–74. Reed Group had communicated to Plaintiff that she or her medical provider needed to submit appropriate medical certification supporting a need for additional FMLA leave by June 2. *Id.* at PageID.175.

The day Plaintiff's FMLA leave was set to expire, June 30, 2014, Plaintiff called Reed Group to ask that her continuous leave be extended until August 11, 2014. *Id.* at PageID.173. Plaintiff, however, contends her doctor called Reed Group asking to extend her continuous FMLA leave until approximately August 4, 2014. Pl.'s Ex. 4 at PageID.303. A Customer Care Specialist told Plaintiff she would need to complete updated paperwork to support that request and sent the requisite paperwork to Plaintiff's personal email address. Defs.' Ex. 15 at PageID.175. Plaintiff testified she was fully aware at this time that she would exhaust her 12 weeks of permitted FMLA leave by August 4, 2014, assuming she was approved to take additional FMLA leave from July 1 to August 4, 2014. Pl.'s Ex.

4 at PageID.303. She also acknowledged she made no effort to return to work before August 4, 2014, even though her approved FMLA leave had expired on June 30, 2014. *Id.*

Plaintiff remained in touch with Reed Group throughout July and August 2014. Defs.' Ex. 15 at PageID.173. But Reed Group's records show it never received certification from Plaintiff's medical provider that would justify extending her FMLA leave after June 30, 2014.[2] *Id.* And on July 21, 2014, Plaintiff called Reed Group to express her frustration that "her position has been filled because she was not covered under the FMLA once FMLA [was] exhausted." *Id.* Accordingly, it is undisputed that Plaintiff was at this point fully aware her statutory leave had expired.

On July 29, 2014, Reed Group sent Plaintiff a letter advising her to contact Human Resources to verify her return to work date. Pl.'s Supp. Ex. 2, ECF No. 20-3. Shortly thereafter, on August 4,

---

[2] The FMLA provides that "[a]n employer may require that a request for leave . . . be supported by a certification issued by a health care provider" and the employee "shall provide, in a timely manner, a copy of such certification to the employer." *Verkade v. U.S. Postal Serv.*, 378 F. App'x 567, 573 (6th Cir. 2010) (quoting 29 U.S.C. § 2613(a) (2007)). "If the employee never produces the [required] certification, the leave is not FMLA leave." 29 C.F.R. § 825.311(b) (2007)).

2014, Reed Group sent Plaintiff a follow-up letter urging her to get in touch to "discuss your return to work date, or to discuss options if you are not able to return to work at this time." Pl.'s Supp. Ex. 3, ECF No. 20-4. That same day, Reed Group sent Sierra, Plaintiff's Human Resources Manager, a letter explaining that Plaintiff had exhausted her FMLA leave and been directed to "contact Human Resources to discuss returning to work." Pl.'s Supp. Ex. 4, ECF No. 20-5.

Just two days later, on August 6, 2014, Plaintiff texted Sierra to express her uncertainty about returning to Lowe's:

> Looks like I will be off until September. I'm not sure what to do at this point. I know they want me gone and I honestly don't want to come back to all the stress, not good for my overall health [sic] I am finding out being off.

Defs.' Ex. 16, ECF No. 16-17. Around this time, Plaintiff also told Sierra she would not return to the White Lake Lowe's if she had any choice in the matter; she would prefer to work at another location. Pl.'s Ex. 4 at PageID.306; *see* also Defs.' Ex. 12, ECF No. 16-13 at ¶ 5 (Sierra Aff.) ("[Plaintiff] repeatedly stated that she did not want to return to work at the White Lake Store"). Sierra worked

with Plaintiff to explore opportunities at other Lowe's locations but none "turned out to be a viable option." Defs.' Ex. 12 at ¶ 6.

If she wished to return to Lowe's, Plaintiff needed to provide a return-to-work letter from her medical provider. But it appears neither Plaintiff or her medical provider, Robert Brummeler, M.D., ever sent any authorization to Reed Group or Lowe's medically clearing Plaintiff to return to work—at least not before August 20, 2014. The only document in the record produced or signed by Dr. Brummeler is a letter he addressed to Plaintiff on August 20, 2014. Pl.'s Ex. 8, ECF No. 17-9 at PageID.333. That letter states, "Constance Shimko is currently under my medical care and is able to return to [work] 8/4/14." *Id.* Included in that same exhibit is a patient record also dated August 20, 2014 and signed by Dr. Brummeler. *Id.* at PageID.337–341. The patient record states, "Return to work evaluation . . . . [Plaintiff] is feeling better and feels that she will be able to return to work. Will give her a note." *Id.* at PageID.337. Based on these documents, it appears Plaintiff was not cleared by her doctor to return to work until August 20, 2014 at the earliest—seven weeks after her authorized FMLA leave had ended

and 15 days after she would have exhausted her entire statutorily-permitted 12 weeks of FMLA leave, (which would have been available *if* she had she provided sufficient documentation to continue on FMLA leave from July 1, 2014 through August 4, 2014). *See id.* And Plaintiff failed to produce any evidence showing that this return-to-work authorization was ever sent to Reed Group, or to Lowe's.

Even though Plaintiff's authorized FMLA leave had expired two months before, on September 2, 2014, Andrea Newberry, a Reed Group employee, emailed a Lowe's Accommodation Specialist to communicate that she had spoken with Plaintiff and told her that "Reed/Accommodations group need a few more documents before we can proceed with bringing her back . . . . [and that] if she could have her doctor get this moving ASAP, that maybe we can get everything worked out this week." Pl.'s Ex. 9, ECF No. 17-10. A note in Plaintiff's Reed Group file from that same day states, "AHRM [Human Resources Manager] will bring [Plaintiff] back to her DM installed sales position but we will need the medical provider to provide a RTW [return-to-work] note with the parameters of the IL

[intermittent leave] or any other accommodation that might be needed." Defs.' Ex. 15 at PageID.172. This evidence suggests that Lowe's was trying to return Plaintiff to work, not terminate her, despite the fact that she had remained off work months after her FMLA leave ended. Yet, as of September 5, 2014, Reed Group still had "not received a return to work form." Defs.' Ex. 15 at PageID.172. Sierra swore in a 2018 affidavit that Plaintiff never provided that form to Reed Group. Defs.' Ex. 12 ¶ 7. On April 1, 2015, Lowe's sent Plaintiff a letter explaining that her employment was scheduled to be terminated on May 15, 2015 because her leave of absence had exceeded "the maximum 365 day leave period." Defs.' Reply, Ex. 1, ECF No. 18-1.

## DISCUSSION

### A. Defendants' Motion to Dismiss Lowe's Companies, Inc.

Defendants urge that Lowe's Companies should be dismissed from this lawsuit because Plaintiff has presented no evidence establishing she was ever employed by Lowe's Companies, nor has she articulated any other basis for liability on the part of that corporate entity. The Court agrees. Moreover, Plaintiff stated during

oral argument that she had no objection to dismissing Lowe's Companies as a Defendant.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss under this Rule, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

Under *Ashcroft v. Iqbal*, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

Throughout the Complaint, Plaintiff refers to Lowe's Companies and Lowe's Home Centers collectively as "Lowe's." Compl., ECF No. 1 at PageID.1. She does not distinguish between these distinct corporate entities and fails to allege specific facts that, if accepted as true, would establish liability on the part of Lowe's Companies. Further, the employment contract attached to Defendants' motion refers only to Lowe's Home Centers, with no reference to Lowe's Companies. *See* Defs.' Ex. 18, ECF No. 16-19. Plaintiff provided no argument in opposition to Defendants' motion seeking dismissal of Lowe's Companies and consented to dismissal of that Defendant during oral argument on Defendant's motion. The Court will thus dismiss Lowe's Companies from this litigation.

## B. Defendants' Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material

fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### 1. Family Medical Leave Act

The FMLA entitles eligible employees who suffer from "a serious health condition that makes the employee unable to perform the functions of the position" to take up to 12 weeks of qualifying leave per year. 29 U.S.C. § 2612(a)(1)(d). Qualifying employees who return to work within the 12-week leave period are entitled to be returned to their previous position or to an equivalent position with the same pay, benefits, and other terms of employment. *Edgar v. JAC Prod., Inc.*, 443 F.3d 502, 506 (6th Cir. 2006) (citing 29 U.S.C. § 2614(a)(1)). "Once the 12-week period ends, however, employees

who remain 'unable to perform an essential function of the position because of a physical or mental condition . . . have no right to restoration to another position under the FMLA." *Edgar*, 443 F.3d at 506 (quoting 29 C.F.R. § 825.214(b)) (some internal punctuation omitted). Similarly, "an employee on approved FMLA leave has no right to job restoration under the Act if she fails to return to work twelve weeks after her leave began." *Hicks v. Leroy's Jewelers, Inc.*, No. 06-5137, 2000 WL 1033029, at *5, 225 F.3d 659 (6th Cir. Jul. 17, 2000) (unpub. table opinion) (*per curiam*); *see also Coker v. McFaul*, 247 F. App'x 609, 620 (6th Cir. 2007) ("Once an employee exceeds his twelve work weeks . . . of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA.") (quoting *Manns v. ArvinMeritor, Inc.*, 291 F. Supp. 2d 655, 660 (N.D. Ohio 2003)).

There are two theories of recovery under the FMLA: (1) interference with an employee's exercise or attempt to exercise any right provided under the FMLA and (2) retaliation against an employee for exercising her rights under the FMLA by discharge or any other

manner of discrimination. *Gages v. U.S. Postal Serv.*, 502 F. App'x, 488–89 (6th Cir. 2012). Plaintiff asserts claims under both theories.

a. *FMLA Interference*

To establish a *prima facie* case of FMLA interference, a plaintiff must show that: "(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yoruzu Auto. Tenn., Inc.***,** 454 F.3d 549, 556 (6th Cir. 2006)). Here, only the fifth element is in dispute. Plaintiff alleges Defendants interfered with her rights under the FMLA by refusing to provide her with a return to work date. The question for the Court is whether there is a genuine issue of material fact as to whether Plaintiff provided her employer (in this case, through third-party administrator Reed Group) with a return-to-work form from her doctor before her FMLA leave expired. If there is no evidence that Plaintiff provided a doctor's return-to-work form before

her FMLA leave expired, she was not denied any FMLA benefit to which she was entitled.

An employer may require medical clearance following FMLA leave if the employer has a "uniformly-applied policy or practice that requires all similarly-situated employees . . . who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work."[3] 29 C.F.R. § 825.310(c) (2007)). The clearance "need only be a simple statement of an employee's ability to return to work." *Verkade*, 378 F. App'x at 576 (quoting 29 C.F.R. § 825.310(c) (2007)). And an employer may legally delay restoring the employee to her position until she submits the required fitness-for-duty certification "unless the employer failed to provide the notices required."[4] 29

---

[3] Here, Plaintiff has not challenged Reed Group and Lowe's policy of requiring return to work clearance from employees coming off continuous FMLA leave. Similarly, Plaintiff does not dispute that she was repeatedly notified of this requirement.

[4] "An employer is not entitled to certification of fitness to return to duty when the employee takes intermittent leave [as opposed to continuous leave." 29 C.F.R. § 825.310(g) (2007)). It is undisputed that only Plaintiff's request for continuous FMLA leave from May 14 to June 30, 2014 was approved. Her requests for subsequent intermittent leave were denied because of lack of supporting medical certification. *See* Defs.' Ex. 14 at PageID.169.

C.F.R. § 825.310(f) (2007)). The Sixth Circuit has addressed the issue of return-to-work clearance in the FMLA interference context, albeit in an unpublished opinion. In *Verkade v. United States Postal Service*, the court found an employer's requirement that its employee provide return-to-work clearance from his doctor was "reasonable" and that because the plaintiff "was on notice that he was required to obtain return-to-work clearance . . . any delay in granting clearance [to return to work] was due to his delay rather than to any action or inaction of the [employer]." *Id.* at 577.

Here, there is no evidence that Plaintiff provided Reed Group or Lowe's with the requisite return-to-work authorization before her approved FMLA leave ended on June 30, 2014. In fact, Plaintiff admits she was not medically cleared to work until August 4, 2014, at the earliest. Pl.'s Ex. 4 at PageID.304. (The only letter from Plaintiff's medical provider in the evidentiary record is dated August 20, 2014, 15 days after Plaintiff's approved FMLA leave

ended).[5] Pl.'s Ex. 8. That letter and the accompanying documentation from Dr. Brummeler suggest he first examined Plaintiff to assess her ability to return to work on August 20, 2014. *Id.* at PageID.333, 337. Specifically, Dr. Brummeler's patient record from that date states, "[Plaintiff] is feeling better and feels that she will be able to return to work. Will give her a note." *Id.* at PageId.337.

In deposition testimony, Plaintiff averred that she sent Sierra two separate letters releasing her to return to work as of August 4, 2014: one that Sierra lost, and a replacement. *See* Pl.'s Ex. 4 at PageID.305. Critically, however, this testimony does not raise any question of fact as to whether she sent the return to work letter to Lowe's or to Reed Group *before* her leave expired. And Reed Group's records, in addition to other evidence in the record, indicate that as of September 5, 2014, more than two months after Plaintiff's authorized FMLA leave ended, Reed Group still had "not received a return to work form." Defs.' Ex. 15 at PageID.172; *see also infra* at 11–13.

---

[5] Similarly, the CIGNA letter stating it was aware Plaintiff had been released to return to work as of August 4, 2014 is dated October 9, 2014. Pl.'s Ex. 7.

As an initial matter, when Plaintiff failed to return to work the day after her approved FMLA leave expired on June 30, 2014, she lost her entitlement to be returned to her previous position there. But Lowe's continued to work with Plaintiff through July, August, and September 2014 to establish a return-to-work date timeline, repeatedly explaining that she needed to submit return-to-work clearance from her medical provider. *Infra* at 11–13. Because the obstacle to Plaintiff returning to work was her failure to promptly submit return-to-work clearance, Lowe's decision not to issue a return-to-work schedule did not deny Plaintiff any benefit to which she was entitled under the FMLA. Plaintiff has thus failed to establish a genuine issue of material fact as to whether she can meet the fifth element of her *prima facie* case for FMLA interference. Accordingly, judgment as a matter of law in favor of Defendants is appropriate on this theory.

b. *Retaliation*

A *prima facie* case for FMLA retaliation requires a plaintiff to show the following: "(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights

under the FMLA; (3) after learning of the employee's exercise of her FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Sybra*, 667 F.3d at 761 (citing *Killian*, 454 F.3d at 556). Only the fourth element is disputed by the parties. Plaintiff, however, has failed to show any causal connection between her decision to take FMLA leave and Defendants' decision not to issue her a return-to-work schedule (and ultimately to terminate her employment). She has thus failed to set out her *prima facie* case for FMLA retaliation and that claim must be dismissed as a matter of law.

To establish the fourth element of her *prima facie* case, Plaintiff "must present sufficient evidence to 'raise [an] inference that her protected activity was the likely reason' for the adverse action." *Gardner v. Andersen Eye Assoc., PLC*, 150 F. Supp. 3d 860, 866 (E.D. Mich. 2016) (quoting *Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 387 (6th Cir. 2006)). While Plaintiff's burden at this stage is minimal, she has failed to produce credible evidence raising a question of fact as to whether there was any causal connection between

her leave-taking and Lowe's failure to provide her with a return to work schedule, and to subsequently terminate her employment. *See Cutcher v. Kmart Corp.*, 364 F. App'x 183, 190 (6th Cir. 2010).

The only evidence in the record that suggests Lowe's was unhappy with Plaintiff's decision to take FMLA leave is Plaintiff's hearsay testimony explaining that she "remember[ed] hearing . . . that there was a little scuttlebutt with the management group in White Lake, the issues that I—me taking medical leave was causing them." Pl.'s Ex. 4 at PageID.299. This does not suffice to establish any causal connection between Plaintiff's FMLA leave and lack of return to work schedule or subsequent termination, even at the *prima facie* stage. Specifically, this testimony fails to establish that Lowe's refrained from giving Plaintiff a return-to-work schedule and later terminated her *because* Plaintiff took FMLA leave. *See Sharp v. Profitt*, 674 F. App'x 440, 451 (6th Cir. 2016) (explaining that establishing a *prima facie* case of FMLA retaliation requires "a showing of but-for causation.").

The record overwhelmingly suggests Plaintiff was not given a return-to-work schedule because she never provided return-to-

work clearance when her FMLA leave expired on June 30, 2014, nor did she submit additional medical certification required to extend her leave until August 4, 2014. These reasons are repeatedly referenced in Reed Group's files and correspondence to Plaintiff. Defs.' Ex. 15 at PageID.172–73; Defs.' Ex. 14 at PageID.169. Further, Plaintiff admits she was not medically cleared to return to work until August 4, 2014, more than one month after her approved continuous leave ended. Pl.'s Ex. 4 at PageID.304. And one month later, on September 5, 2014, Reed Group still had "not received a return to work form." Defs.' Ex. 15 at PageID.172. The Sixth Circuit has found dismissal of an FMLA retaliation claim on summary judgment appropriate where, as here, the "[plaintiff's] physician did not provide medical certification [authorizing additional FMLA leave] and she did not return to work after being informed that certification was not forthcoming." *Harrington v. Boysville of Mich., Inc.*, No. 97-1862, 1998 WL 252755, at *2, 145 F.3d 1331 (6th Cir. May 13, 1998) (unpub. table opinion) (*per curiam*). Because Plaintiff has failed to demonstrate a causal connection between taking

FMLA leave and Lowe's adverse employment actions, she has failed to present a *prima facie* case of FMLA retaliation.

### 2. Americans with Disability Act and Michigan Persons with Disabilities Civil Rights Act

The Americans with Disability Act (ADA) and an analogous Michigan law, the Persons with Disabilities Civil Rights Act (PWD-CRA), prohibit employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Curry v. Cyprian Ctr.*, 17 F. App'x 339, 341 (6th Cir. 2001) (explaining that claims of handicap discrimination under Michigan law track those under federal law).

To establish a *prima facie* case of disability discrimination under the ADA or PWDCRA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation;

and (3) she suffered an adverse employment consequence solely because of her handicap. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004) (citation omitted). The Sixth Circuit specifically held in *Gantt v. Wilson Sporting Goods Company*, 143 F.3d 1042, 1046 (6th Cir. 1998), that an employer's policy of terminating any employee who does not return to work at the expiration of their authorized leave period, as Plaintiff did here, does not violate the ADA. The record here is undisputed that this was the reason that Defendant did not allow Plaintiff to return to work. There is no evidence that any adverse employment action suffered by Plaintiff was because of her disability. Because she has not adduced facts raising any genuine material issue that there was a causal connection between the adverse employment consequence she suffered and her disability, Plaintiff has failed to establish a *prima facie* case of discrimination under the ADA or PWDCRA.

### 3. Employee Retirement Income Security Act § 501

Defendants also seek summary judgment on Plaintiff's claim under § 501 of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1140. That statute makes it "unlawful for

any person to discharge, fine, suspend, expel, discipline, or discrim-
inate against a participant or beneficiary for exercising any right to
which he is entitled under the provisions of an employee benefit
plan . . . or for the purpose of interfering with the attainment of any
right to which such participant may become entitled under the
plan." *Id.* Plaintiff admitted in deposition testimony that Defendant
provided her with all of the insurance coverage and disability cov-
erage to which she was entitled, and that no Lowe's employee ex-
pressed any problem with her receiving pension benefits or
healthcare benefits. Pl.'s Ex. 4 at PageID.308. Plaintiff's decision to
*de facto* abandon this claim in her response to the summary judg-
ment motion and during oral argument further informs the Court's
decision to dismiss this claim. *See* Pl.'s Resp. at PageID.220 (stating
only, "This Count speaks for itself.").

### 4. Bullard-Plawecki Employee Right to Know Act

Defendants further assert they are entitled to summary judg-
ment on Plaintiff's claim for violation of Michigan's Bullard-
Plawecki Employee Right to Know Act. This Michigan statute re-

quires employers, upon a written request by an employee, to periodically provide an employee with access to her personnel record and permit her to make copies of it. Mich. Comp. Laws § 423.503–423.504. The statute also permits an employee to seek expungement of any "false" information the employer knowingly places in the personnel record. Mich. Comp. Laws § 423.505.

It is undisputed that Defendants provided Plaintiff with access to her personnel folder shortly after she requested it in November 2014. Pl.'s Ex. 4 at PageID.308. Plaintiff, however, alleges that Defendants "either failed to keep an accurate personnel file on [Plaintiff] or purposely purged her personnel file of positive reviews and awards." ECF No.1 at PageID.14. The Bullard-Plawecki Employee Right to Know Act does not plainly entitle Plaintiff to any relief based on that allegation, nor has Plaintiff explained why she believes the statute entitles her to relief. In *Russell v. Bronson Heating and Cooling*, 345 F. Supp. 2d 761, 795 (E.D. Mich. 2004) (Borman, J.), another court in this district granted summary judgment on plaintiff's claim that his rights under the Act were violated

because the defendants "did not produce a complete file for her review." The plaintiff alleged that two letters were missing from the file defendants produced, and therefore that defendants had not fully complied with their statutory obligations. *Id.* The court rejected that argument and, relying on *Beauchamp v. Great West Life Assurance Co.*, 918 F. Supp. 1091 (E.D. Mich. 1996) (Gadola, J.), determined that because there was no evidence the letters had been "intentionally withheld" and plaintiff was aware the letters existed (and in fact had copies of them), she had no cause of action under the Act. *Russell*, 345 F. Supp. 2d at 795. While *Russell* is not exactly analogous to the case at hand because Plaintiff appears not to possess copies of the positive commendations she contends were removed from her personnel file, she had not produced any evidence that Lowe's intentionally withheld those commendations. Under *Russell* and *Beauchamp*, summary judgment on Plaintiff's claim under the Bullard-Plawecki Employee Right to Know Act is thus appropriate.

## CONCLUSION

For the reasons explained herein, Defendants' motion to dismiss Defendant Lowe's Companies, Inc. from this lawsuit is **GRANTED**. Further, Defendants' motion for summary judgment on Plaintiff Constance Shimko's claims for FMLA interference (Count I), FMLA retaliation (Count II), violation of § 501 of ERISA (Count III), violation of the ADA (Count IV), violation of the Michigan Persons With Disabilities Civil Rights Act (Count V), and violation of the Bullard-Plawecki Employee Right to Know Act (Count VI) is **GRANTED**. Accordingly, Plaintiff's lawsuit is dismissed with prejudice.

**SO ORDERED.**


Dated: February 26, 2019    s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE